UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
MAR 3 1 2003
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| FARIBA MOEINPOUR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CV 01-B-1676-S |
| ) | |
| BOARD OF TRUSTEES OF THE ) | |
| UNIVERSITY OF ALABAMA; DR. H. ) | |
| KENNETH DILLON, ) | |
| ) | |
| Defendants. ) | |

ENTERED
APR - 1 2003

## MEMORANDUM OPINION

Currently before the court is the Second Motion to Dismiss filed by defendants, the Board of Trustees of the University of Alabama and Dr. Kenneth Dillon. (Doc. 11.)

Plaintiff, Fariba Moeinpour, alleges that defendants discriminated against her on the basis of her sex and retaliated against her after she complained of Dillon's sexual harassment. Plaintiff also alleges that the Board and Dillon discriminated against her on the basis of her national origin, which is Iranian. Plaintiff also asserts state law claims of intentional infliction of emotional distress, and assault and battery against both defendants and a claim of negligent supervision against the Board.

Upon consideration of the record, submissions of the parties, argument of counsel, and the relevant law, the court is of the opinion that defendants' Motion to Dismiss, (doc. 11), is due to be granted.



## I. **MOTION TO DISMISS STANDARD**

The Eleventh Circuit Court of Appeals has stated that a Motion to Dismiss "is viewed with disfavor and rarely granted." *Brooks v. Blue Cross and Blue Shield*, 116 F.3d 1364, 1369 (11th Cir. 1997)(citing *Madison v. Purdy*, 410 F.2d 99, 100 (5th Cir. 1969); *International Erectors, Inc. v. Wilhoit Steel Erectors & Rental Service*, 400 F.2d 465, 471 (5th Cir. 1968)). When deciding a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the court "must accept the allegations set forth in the complaint as true." *Gonzalez v. McNary*, 980 F.2d 1418, 1419 (11th Cir. 1993)(citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir. 1986)); *see also Jackson v. Okaloosa County*, 21 F.3d 1531, 1534 (11th Cir. 1994). The court will dismiss a claim only when it is clear that no relief could be granted under any set of facts consistent with the allegations in the Complaint. *Hishon*, 467 U.S. at 73; *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). "A complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on *any* possible theory." *Brooks*, 116 F.3d at 1369 (citing *Robertson v. Johnston*, 376 F.2d 43 (5th Cir. 1967))(emphasis in original).

"[T]he threshold that a complaint must meet to survive a motion to dismiss is 'exceedingly low.'" *Holley v. City of Roanoke*, 162 F. Supp. 2d 1335, 38 (M.D. Ala. 2001)(quoting *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985)). "[A] defendant thus bears the 'very high burden' of showing that the plaintiff cannot conceivably prove any set of facts that would entitle him to relief." *Beck v. Deloitte &*

*Touche*, 144 F.3d 732, 735-736 (11th Cir. 1998)(citing *Jackam v. Hospital Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir. 1986)), *cited in McClendon v. May*, 37 F. Supp. 2d 1371, 1375 (S.D. Ga. 1999).

Defendant Dillon contends, *inter alia*, that he is entitled to qualified immunity. "While the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be, as it was in this case, raised and considered on a motion to dismiss." *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002)(citing *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001)). "Once an officer has raised the defense of qualified immunity, the burden of persuasion on that issue is on the plaintiff." *Id.* (citing *Suissa v. Fulton County*, 74 F.3d 266, 269 (11th Cir. 1996)).

## II. STATEMENT OF FACTS

Plaintiff, Fariba Moeinpour, was a student in the School of Public Health at the University of Alabama at Birmingham ["UAB"]. (Doc. 10 ¶ 6.) She is a female and her nation of origin is Iran. (*Id.* ¶ 3.)

Plaintiff contends that she was subject to "constant sexual harassment" by H. Kenneth Dillon, "her professor, supervisor, and advisor." (*Id.* ¶ 7.) She states that Dillon was "unusually nice and helpful" and "unusually kind" to her. (*Id.* ¶¶ 7, 8.) Between 1999 and February 2000, Dillon allegedly touched her hand twice, hugged her tightly, rubbed his back against her back, and moved her research and belongings to the basement laboratory from the fifth floor laboratory. (*Id.* ¶¶ 7, 11, 13, 14.) In February 2000, Dillon allegedly grabbed plaintiff and told her that he "was showing his affection for her." (*Id.* ¶ 15.) Plaintiff stated

that she told Dillon "to stop fooling with her;" in response, Dillon kissed her lips. (*Id.*) He told plaintiff that he loved her. (*Id.*) Plaintiff replied that she did not love him and she began to cry. (*Id.*) Dillon released plaintiff and warned her he would make her life "miserable" if she reported the incident. (*Id.*) Plaintiff alleges no other acts of a sexual nature after this incident.

The following day, plaintiff told Dillon she wanted to change advisors; Dillon refused. (*Id.* ¶ 17.) Dillon told plaintiff that he had told Dr. Oestenstad, Associate Dean for Student Affairs, that plaintiff loved him and that she had tried to come on to him. (*Id.*) However, when plaintiff spoke with Oestenstad, he told her that he had never believed that she had feelings for Dillon. (*Id.* ¶ 19.) Subsequently, plaintiff was assigned another advisor. (*Id.* ¶ 26.)

Plaintiff reported Dillon's conduct to Jeff Mitchell, Dr. Foreman (Chair of Public Health Department), Dr. Capilouto, and Dr. Lorden. (*Id.* ¶¶ 20-21.)

Plaintiff contends that the "UAB began to make it difficult for [her] to continue her education at UAB." (*Id.* ¶ 23.) She contends that she was not allowed to choose her advisor and that Capilouto and Lorden "gave [her] unnecessary difficult courses to take." (*Id.*) She also contends that Capilouto and Lorden sent her harassing e-mails in order to upset her before she took tests. (*Id.*) She claims that her tuition was not waived and that she was not awarded a fellowship grant. (*Id.*)

One of plaintiff's professors, Dr. Beckman, asked, "Who is Iranian in this class and from Public Health?"; plaintiff was the only Iranian student from the School of Public Health

4

in the class. (*Id.* ¶ 25.) She also contends that one of her professors graded her work without considering her performance because he had been instructed to do so. (*Id.* ¶ 24.)

Plaintiff received a failing grade in one of her classes and was dismissed from the doctoral program in June 2001. (*Id.* ¶ 27.)

### III. DISCUSSION

#### A. FEDERAL CLAIMS

##### 1. Claims Against the Board

###### a. § 1983 Claims

The Board of Trustees of the University of Alabama was established as a state university by act of the Alabama Legislature. *See generally Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356 (2001)(holding Board of Trustees of University of Alabama was a state entity entitled to Eleventh Amendment immunity). Therefore, it is an arm of the State of Alabama and is entitled to Eleventh Amendment immunity against damages suits brought under § 1983. *Cross v. Dep't of Mental Health and Mental Retardation*, 49 F.3d 1490, 1502 (11th Cir. 1995); *Harden v. Adams*, 760 F.2d 1158, 1163-64 (11th Cir. 1985).

Plaintiff acknowledges this immunity, but contends that she seeks only prospective injunctive relief against the Board. (Pl.'s Rev'd Opp. to Defs.' Second Motion to Dismiss at 4.) However, the individual Board Members have not been named as defendants in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 167 (1985). "Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it, however, a State

5

[or agency of the State] cannot be sued directly in its own name regardless of the relief sought." *Id.* (citing *Alabama v. Pugh*, 438 U.S. 781 (1978)).

Therefore, plaintiff's § 1983 claims for gender discrimination; national origin discrimination, and retaliation against the Board are due to be dismissed.

### b. Title IX Claims[1]

### i. Sexual Harassment Claim

Title IX prohibits discrimination on the basis of sex "under any education program or activity receiving Federal financial assistance . . . ." 20 U.S.C. § 1681(a). While Title IX does not expressly provide a cause of action for private parties seeking to enforce its provisions, the Supreme Court has recognized an implied right of action for sexual harassment of students by their teachers and peers. *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 646-47 (1999); *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998).

Actionable sexual harassment under Title IX arises when an individual is "excluded from participation in" or "denied the benefits of" an educational program or activity. *Davis*, 526 U.S. at 650. Under Title IX, recipients of federal funding may be liable for damages "only where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to

---

[1] The court notes that, pursuant to Title IX, the Board waived its Eleventh Amendment immunity as a condition for receiving federal funds. *See Pederson v. Louisiana State University*, 213 F.3d 858, 875-76 (5th Cir. 2000).

6

deprive the victims of access to the educational opportunities or benefits provided by the school." *Id.*; *Gebser*, 524 U.S. at 281. Therefore, for purposes of pleading her Title IX claim against the Board, plaintiff must plead facts showing that she faced harassment so severe, pervasive and objectively offensive that it effectively denied her access to educational opportunities from the recipient of federal funding.

The Eleventh Circuit has held:

> [D]amages are only available where the behavior is so severe, pervasive, and objectively offensive that it denies its victims equal access to education. *Davis*, 526 U.S. at 650. The behavior must be serious enough to have the systemic effect of denying the victim equal access to an educational program or activity. Whether gender oriented conduct rises to the level of actionable harassment often depends on a constellation of surrounding circumstances, expectations, and relationships, including, but not limited to, the ages of the harasser and victim, and the number of individuals involved. *Id.* at 651; *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 83 (1998)

*Hawkins v. Sarasota County School Bd.*, No. 02-10990, 2003 WL 557165, *8 (11th Cir. Feb. 28, 2003). While there is no precise definition of "severe or pervasive" sexual harassment, the Supreme Court in *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 22-23 (1993), noted four factors that may assist a court in its determination:

1. The frequency of the conduct;

2. The severity of the conduct;

3. Whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and

4. Whether the conduct unreasonably interferes with the student's academic performance.

*Id.*; *Mendoza v. Borden*, 195 F.3d 1238, 1246 (11th Cir. 1999) (en banc) (finding that the

7

several instances of unwanted touching and other conduct alleged by the plaintiff did not create a jury question as to an actionable hostile working environment). In addressing the alleged harassment in a Title VII case, "All of the sexual hostile environment cases decided by the Supreme Court have involved patterns or allegations of extensive, long lasting, unredressed, and uninhibited sexual threats or conduct that permeated the plaintiffs' work environment." *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 586 (11th Cir. 2000) (quoting *Indest v. Freeman Decorating Co., Inc.*, 164 F.3d. 258, 264 (5th Cir. 1999)). In *Gupta*, the alleged harasser frequently called the plaintiff at home, after she was in bed, and repeatedly asked her to lunch. *Id.* at 578. He also touched her on three occasions, once on the inside of her thigh; told her she was beautiful; unzipped his trousers to tuck in his shirt in front of her; and made various odd comments implying that he would like to have a relationship with her. *Id.* at 579. The Eleventh Circuit found that Gupta's claim did not rise to the level of actionable harassment because it did not constitute "extensive, long lasting, unredressed, and uninhibited sexual threats or conduct that permeated the plaintiffs' work environment." *Id.* at 586.

 Similarly, plaintiff herein alleges brief touching, including a single unwanted kiss, and a confession of love. After careful consideration of plaintiff's allegations, the court concludes that the conduct alleged by plaintiff does not rise to the level of "severe and pervasive" conduct required for a finding of liability under Title IX. *See id.*; *Saxton v. AT&T*, 10 F.3d 526, 534-35 (7th Cir. 1993).

 Even if the court had determined that Dillon's alleged conduct was severe or pervasive

8

enough to support a finding of actionable sexual harassment, plaintiff's claim against the Board fails for a second reason. "[A] damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has ***actual knowledge*** of discrimination in the recipient's programs and ***fails to adequately respond***." *Gebser*, 524 U.S. at 290 (emphasis added). The recipient's "response must amount to ***deliberate indifference*** to discrimination . . . . [I]n other words, [the recipient's response, or lack of response] is an official decision by the recipient not to remedy the violation." *Id.* at 292-93; *see also Hawkins*, 2003 WL 557165 at *4 (a damage remedy under Title IX will not lie unless defendant has actual knowledge of harassment and fails to remedy it). Moreover, a funding recipient, such as the Board, "may not be liable for damages unless its deliberate indifference subjects its students to harassment. That is, the deliberate indifference must, at a minimum, ***cause*** students to undergo harassment or make them liable or vulnerable." *Davis*, 526 U.S. at 644-45 (emphasis added; internal quotations and citations omitted); *see Benefield v. Board of Trustees of University of Alabama at Birmingham*, 214 F. Supp. 2d 1212, 1219 (N.D. Ala. 2000)("defendant can have liability only where its own deliberate indifference effectively causes the discrimination").

Plaintiff does not allege that Dillon sexually harassed her ***after*** she reported his conduct to recipient officials. Therefore, her Complaint contains no allegation of sexual harassment "caused" by the Board's deliberate indifference to her reports of sexual harassment.

9

Thus, the Title IX sexual harassment claims against the Board are due to be dismissed.

### ii. Retaliation

Plaintiff also alleges a claim for retaliation pursuant to Title IX. The Eleventh Circuit has held, in *dicta*, "[W]e can find nothing in the language or structure of Title IX creating a private cause of action for retaliation . . . ." *Jackson v. Birmingham Bd. of Educ.*, 309 F.3d 1333, 1344 (11th Cir. 2002); *see also Holt v. Lewis*, 955 F. Supp. 1385, 1388 (N.D. Ala. 1995)(finding no private cause of action for retaliation under Title IX because "the congressional authors of Title IX failed to include any express protections against retaliation when considering the problems of gender equity in our nation's educational institutions. . . . Congress has shown that where it intends to outlaw retaliation in the protection of civil rights, it will do so.").

Because the Eleventh Circuit does not recognize a claim of retaliation under Title IX, plaintiff's Title IX retaliation claims are due to be dismissed.

### 2. Claims Against H. Kenneth Dillon

#### a. § 1983 Claims

Plaintiff contends that defendant Dillon discriminated against her on the basis of her national origin and her sex, and that he retaliated against her "in violation of 42 U.S.C. § 1983." (Doc. 10 ¶¶ 29, 32.) Dillon contends that plaintiff has failed to allege a cause of action based on national-origin discrimination and that qualified immunity shields him from plaintiff's § 1983 claims. The court agrees and finds that the claims against Dillon are due to be dismissed.

10

### i. National Origin Discrimination

Plaintiff's Second Amended Complaint contains no allegation of any adverse action taken by Dillon because of plaintiff's national origin. "[T]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47-48 (1957). Failure to allege *any* adverse action taken by Dillon because of plaintiff's national origin is not adequate to give Dillon "fair notice" of plaintiff's claim and the grounds upon which it rests. *Id.*; *see, e.g., Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510-14 (2002).

Because plaintiff's complaint fails to adequately allege a cause of action for national-origin discrimination against Dillon, such claim is due to be dismissed.

### ii. Sexual Harassment

Dillon contends that he has qualified immunity as to plaintiff's Equal Protection/sexual harassment claim. "In evaluating a claim of qualified immunity, [the] first task is to determine whether the plaintiff has alleged the deprivation of a cognizable constitutional right." *Dacosta v. Nwachukwa*, 304 F.3d 1045, 1047 (11th Cir. 2002)(citing *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). For the reasons set forth above,[2] the court finds that plaintiff has not alleged a claim based on Equal Protection/sexual harassment.

---

[2]See, *supra*, pp. 6-8 (finding that plaintiff's allegations do not state a claim of severe or pervasive sexual harassment).

Therefore, defendants' Motion to Dismiss plaintiff's § 1983 claim based on allegations Dillon sexually harassed her is due to be granted and such claim is due to be dismissed.

### iii. Retaliation

Dillon is entitled to qualified immunity on plaintiff's Equal Protection/§ 1983 retaliation claim "[b]ecause no established right exists under the equal protection clause to be free from retaliation." *See Ratliff v. DeKalb County*, 62 F.3d 338, 341 (11th Cir. 1995)(citing, generally, *Lassiter v. Alabama A&M University*, 28 F.3d 1146 (11th Cir.1994)).

Therefore, defendants' Motion to Dismiss plaintiff's § 1983 claim based on allegations Dillon retaliated against her is due to be granted and such claim is due to be dismissed.

### b. Title IX

The Supreme Court has limited liability under Title IX to the "recipient" of the federal financial assistance. *Davis*, 526 U.S. 629; *Holt*, 955 F. Supp. at 1386-87 (holding an individual officer not a proper defendant to Title IX claim). Because the Board, rather than Dillon, was the funding recipient, Dillon cannot be held liable to plaintiff pursuant to an implied cause of action under Title IX.

Therefore, defendants' Motion to Dismiss plaintiff's Title IX claims against Dillon is due to be granted and such claim is due to be dismissed.

### B. STATE-LAW CLAIMS

Based on the court's holding as to plaintiff's federal claims, plaintiff's state law

claims are due to be dismissed without prejudice to the right of plaintiff to pursue such claims in state court. *See* 28 U.S.C. § 1367(c); *Nolin v. Isbell*, 207 F.3d 1253, 1258 (11th Cir. 2000)("At this time, the case retains no independent basis for federal jurisdiction and the only claims that remain deal with complex questions of discretionary function immunity in the state of Alabama. A proper resolution of the two state law causes of action will require a careful analysis of Alabama law -- something the courts of Alabama are in the best position and, for reasons of federalism, should undertake in this sensitive area."); *Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999)("[T]his Court has noted that 'if the federal claims are dismissed prior to trial, [this court] strongly encourages or even requires dismissal of state claims.' *L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 428 (11th Cir.1984)."), *cert. denied* 528 U.S. 820 (1999).

Therefore, plaintiff's state law claims are due to be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c).

## IV. CONCLUSION

For the foregoing reasons, defendants' Motion to Dismiss, (doc. 11), is due to be granted and plaintiff's claims are due to be dismissed. An order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this 3(st day of March, 2003.

*/s/ Sharon Lovelace Blackburn*
**SHARON LOVELACE BLACKBURN**
United States District Judge

13